# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

VANESSA ROMERO,

        Plaintiff,

v.                       No. 1:17-cv-1076-JB-KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff seeks review of the Commissioner's determination that she is not entitled to disability benefits under Title II or Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383c. On November 28, 2018, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. *See Order of Reference*, Doc. 30. Having considered Plaintiff's Motion to Reverse or Remand (Doc. 25), filed July 9, 2018, the Commissioner's response in opposition (Doc. 27), filed September 13, 2018, and Plaintiff's reply (Doc. 28), filed September 25, 2018, the undersigned RECOMMENDS that the Court DENY Plaintiff's Motion for the reasons set forth below.

## I. PROCEDURAL BACKGROUND

On September 12, 2010, Plaintiff filed an application for Social Security Disability Insurance benefits, alleging that she had been disabled since November 29, 2009, due to possible "pituitary failure endocrine system failure."[1] (AR 333-34, 372, 374). Plaintiff's claim was

---

[1] On July 17, 2013, Plaintiff also applied for Supplemental Security Income benefits. (AR 354-56).

denied at both the initial and reconsideration levels of review, and a subsequent hearing before Administrative Law Judge ("ALJ") Ann Farris again ended in a denial. (AR 158-191). Plaintiff then appealed the ALJ's decision to the Social Security Administration's Appeals Council. On May 14, 2015, the Appeals Council granted Plaintiff's request for review and determined that ALJ Farris did not address opinion evidence provided by Plaintiff's Nurse Practitioner Philomena Marcus, and improperly calculated Plaintiff's date of last insured. (AR 199). Ultimately, the Council remanded Plaintiff's case for further proceedings and directed the ALJ to obtain additional evidence; further consider and explain Plaintiff's assessed limitations; and evaluate "the treating source opinions" in accordance with the Administration's rules and regulations. (AR 200).

Per the Council's order of remand, Plaintiff was granted a second hearing before ALJ Gerald Meyer. In the decision that followed, ALJ Meyer, too, determined that Plaintiff was not disabled and her claim was once again denied. In making his decision, ALJ Meyer engaged in the required five-step disability analysis,[2] first finding that, although Plaintiff had worked part-time between 2010 and 2014, she had not engaged in substantial gainful activity since her alleged onset date of November 29, 2009.[3] (AR 50). At step two, ALJ Meyer found that Plaintiff had the severe impairments of Raynaud's phenomenon; cervical spine degenerative disc disease; lumbosacral strain; pituitary gland disorder and hypothyroidism; chronic pain syndrome; and mood disorder. (AR 51). At step three, ALJ Meyer determined that none of Plaintiff's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR 55).

---

[2] *See* 20 C.F.R. § 404.1520 (outlining the five-step analysis).
[3] The ALJ also determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (AR 50).

ALJ Meyer next assessed Plaintiff's Residual Functional Capacity ("RFC"),[4] finding that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift or carry ten pounds frequently or twenty pounds occasionally, stand and walk about six hours in an 8-hour day with normal breaks or sit for six hours. The following are never: climbing ropes, ladders, or scaffolds, crawling, exposure to extreme heat or extreme cold, exposure to noxious odors, fumes, dusts, gases and chemicals, and exposure to unprotected heights or dangerous machinery. The following are occasionally: climbing ramps and stairs, balancing, stooping, kneeling, and crouching. Handling and fingering with either arm would be limited to frequently but not continually. Mentally, the claimant would be able to understand, remember and carry out detailed but not complex instructions.

(AR 57). The ALJ then proceeded to steps four and five where, with the help of a vocational expert, he determined that Plaintiff could not perform her past relevant work but that she could perform the requirements of representative occupations such as cashier II, furniture rental clerk, and mail sorter. (AR 63). Accordingly, ALJ Meyer concluded that Plaintiff was not disabled.

The ALJ's decision became final when, on September 11, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-4). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5). Plaintiff now asks the Court to reverse and remand the Commissioner's decision, arguing that ALJ Meyer improperly weighed the opinion evidence of record.

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. §

---

[4] The RFC gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).

405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. ANALYSIS

Prior to making his decision, ALJ Meyer considered the evidence of record and, as is relevant here,[5] assessed and rejected opinion evidence provided by Plaintiff's medical providers—nurse practitioners Philomena Marcus ("NP Marcus") and Maureen Kolomeir ("NP Kolomeir"), and treating physician, Anthony P. Reeve, M.D.—all of whom assessed Plaintiff with a variety of extreme limitations. Plaintiff contends that the ALJ improperly weighed this evidence and, but for the ALJ's alleged errors in this regard, her applications for disability benefits would have been granted.

---

[5] The administrative record in this case comprises more than two thousand pages. And, the medical and opinion evidence therein contained reflects that Plaintiff sought treatment from numerous providers for a variety of symptoms. This evidence is thoroughly summarized in the parties' briefings, as well as in ALJ Meyer's unfavorable decision, so it would serve no purpose to discuss the record in its entirety here. Relevant to this analysis is the ALJ's consideration of the opinions provided by Plaintiff's treating providers.

At the time of the ALJ's decision, licensed physicians, such as Dr. Reeve, qualified as "acceptable medical sources" whereas nurse practitioners, including NP Marcus and NP Kolomeir, were considered "non-acceptable medical sources" (hereinafter "other sources"). While only an "acceptable medical source" can give medical opinions, establish the existence of a medically determinable impairment, and be considered a treating source, SSR 06-03p, 2006 WL2329939, *2, information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Accordingly, an ALJ is required to consider and weigh every opinion contained in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. § 404.1527(c), (f).

In determining what weight to give to an opinion, the ALJ evaluates several factors including, inter alia, the supportability and consistency of the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ need not expressly consider all of the relevant factors, but his or her decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the…medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted). Additionally, the ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Byron*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Having meticulously combed the record, the Court finds that ALJ Meyer properly considered the opinion evidence in question.

### Nurse Practitioner Marcus

As ALJ Meyer noted in his decision, NP Marcus was Plaintiff's "most consistent primary care provider," (AR 51), with a documented treatment history beginning in 2010 and continuing through 2016. (AR 4F, 6F, 11F, 23F, 37F-40F). On August 10, 2011, NP Marcus authored a

letter wherein she expressed that as a result of Plaintiff's "several chronic conditions," Plaintiff was unable to work inside or outside of the home. (AR 981). NP Marcus added that she was "hopeful" that at some point Plaintiff would be able to "live and actually participate in the minimum of 'normal' activities of daily living." (*Id.*). ALJ Meyer gave NP Marcus' opinion "little weight" on the ground that Plaintiff was working on a part-time basis from 2010-2014. (AR 60). In support of his weight assignment, the ALJ cited to Plaintiff's Certified Earnings Records which show that Plaintiff earned $6,951.00 in 2010; $9,471.00 in 2011; $6,926.00 in 2012; $7,757.00 in 2013; and $10,140.00 in 2014. (AR 60, 360).

Roughly two years later, on July 16, 2013, NP Marcus completed medical assessments regarding Plaintiff's ability to do physical and non-physical work-related activities. (AR 1251-54). In terms of Plaintiff's physical abilities, NP Marcus opined that Plaintiff was limited to lifting less than five pounds whether occasionally or frequently, standing less than two hours in an eight-hour workday, and sitting less than six hours in an eight-hour workday. NP Marcus further noted that plaintiff had upper extremity limitations, was unable to do repetitive handling and/or fingering, and could never kneel, stoop, crouch, or crawl. (AR 1251).

Turning to Plaintiff's non-physical work-related abilities, NP Marcus assessed Plaintiff with a multitude of moderate and marked limitations in the areas of understanding and memory and sustained concentration and persistence. (AR 1252-53). NP Marcus also completed mental health forms which indicated that the severity of Plaintiff's mental impairments met the criteria of listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (AR 1249-50). Again, ALJ Meyer gave NP Marcus' opinion "little weight," explaining that the opinion was inconsistent with Plaintiff's part-time work history, NP Marcus' own treatment notes, and the medical findings made by other physicians. (AR 60-61).

Plaintiff argues that ALJ Meyer rejected NP Marcus' opinion without considering important factors including (1) the fact that the record contains "around seventy (70) instances where Ms. Marcus treated Plaintiff"; (2) the "overwhelming evidence of abnormal physical examination findings contained in Ms. Marcus' treatment notes"; and (3) the consistency between NP Marcus' opinion and the evidence provided by NP Kolomeir and Dr. Reeve. (Doc. 25, pp.10-11). The Court disagrees with Plaintiff's contentions.

Although ALJ Meyer did not, specifically, mention that NP Marcus treated Plaintiff seventy times, he did note that NP Marcus was Plaintiff's most consistent caregiver and he dedicated a large portion of his decision to discussing NP Marcus' treatment notes. *See, e.g.*, AR 51, 52, 54, 59-61. ALJ Meyer also provided specific reasons for discounting NP Marcus' opinion viz., NP Marcus' treatment notes indicating normal physical and psychological findings, and inconsistencies between the nurse practitioner's opinion and medical assessments made by various physicians and specialists. (AR 59-61). Plaintiff's request that the Court consider evidence which Plaintiff believes supports and/or is consistent with NP Marcus' opinion is an invitation to reweigh the evidence of record. This the Court cannot and will not do. *Allman*, 813 F.3d 1326, 1333 (10th Cir. 2016).

### Nurse Practitioner Kolomeir

NP Kolomeir treated Plaintiff a total of four times between January 2013 and July 2013. (Doc. 28, p. 5, fn. 9; AR 1194-99, 1234-41). On July 24, 2013, NP Kolomeir completed assessments of Plaintiff's mental health and, like NP Marcus, determined that the severity of Plaintiff's mental impairments met the criteria of listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). (AR 1234-35). ALJ Meyer discussed these findings and determined that they were inconsistent with NP Kolomeir's treatment notes. (AR 61). He further opined

that "an individual with as many marked levels of dysfunction as reported by Ms. Marcus and Ms. Kolomeir would likely require mental health hospitalization." (*Id.*). The ALJ concluded by noting that, as nurse practitioners, neither NP Marcus nor NP Kolomeir are considered acceptable medical sources. While the ALJ did not explicitly assign weight to NP Kolomeir's opinion, his discussion of the evidence makes clear that he afforded the opinion little to no weight.

Plaintiff objects to ALJ Meyer's treatment of NP Kolomeir's opinion, arguing that the ALJ failed to indicate what weight, if any, he gave to this evidence and failed to provide a meaningful review of the nurse practitioner's findings. Plaintiff's objections are without merit.

As stated above, Plaintiff's treatment history with NP Kolomeir comprises four visits. In his decision, ALJ Meyer discussed Plaintiff's limited mental health treatment history and noted that the "most recent psychiatric findings reported by Ms. Marcus indicated good judgment, normal mood and affect, and normal memory." (AR 60). The ALJ then addressed NP Kolomeir's opinion and determined that the nurse practitioner's extreme assessment was inconsistent with her treatment notes that "reflect no more than moderate psychiatric symptoms." (AR 61). This discussion reflects that ALJ Meyer properly considered NP Kolomeir's opinion in accordance with 20 C.F.R. § 404.1527(c). He evaluated Plaintiff's treatment relationship with NP Kolomeir, as well as the consistency and supportability of NP Kolomeir's opinion, and declined to find that the opinion was entitled to any weight. *See* 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(4). *See also* 20 C.F.R. § 404.1527(f)(1) (explaining that, when evaluating "other source" evidence, "not every factor…will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source…depends on the particular facts in each case.").

Turning to Plaintiff's argument regarding the ALJ's failure to assign weight to NP Kolomeir's opinion, the Court finds that this omission is not fatal to the ALJ's decision. As previously mentioned, it is clear from ALJ Meyer's decision that he gave the opinion little to no weight. Consequently, the ALJ's failure to explicitly assign weight to the opinion does not require reversal. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). *See also* 20 C.F.R. § 404.1527(f)(2) (explaining that the "adjudicator *generally* should explain the weight given to opinions from ["other sources"] *or* otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning") (emphasis added).

Plaintiff also argues that ALJ Meyer improperly speculated that an individual with the extreme limitations reported by NPs Marcus and Kolomeir would likely require hospitalization. (Doc. 25, p. 11). True, an ALJ may not substitute his opinion for that of a medical professional; however, the ALJ provided substantial evidence to support his determination that the nurse practitioners' opinions were entitled to little weight. *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007) ("As long as substantial evidence supports the ALJ's determination, the [Commissioner's] decision stands.") (quotation omitted).

### Dr. Reeve

In June 2012, following a motor vehicle accident, Plaintiff began pain management and rehabilitation treatment with Dr. Anthony Reeve. (AR 1211). On August 20, 2012, Dr. Reeve submitted a letter which indicated that Plaintiff was unable to work due to multiple medical conditions. (AR 1256). Dr. Reeve also stated that the "pain medication that [Plaintiff] takes on a daily basis is impairing and would effect[sic] any type of work that she attempted to perform." (*Id.*). Without explicitly assigning weight to the doctor's opinion, the ALJ implicitly rejected the

evidence by pointing out that Plaintiff was working part-time when Dr. Reeve wrote the letter and by noting that the doctor's opinion was not supported by the doctor's own treatment notes. (AR 61). In regard to the latter, ALJ Meyer highlighted two instances in 2013 when Dr. Reeve stated that Plaintiff "will continue on light duty," (AR 1205, 1230), and one instance in 2012 in which the doctor stated that Plaintiff's pain is controlled by medication. (AR 61, 1218).

Here, Plaintiff contends that the ALJ failed to (1) state the weight he assigned to Dr. Reeve's opinion; (2) discuss Dr. Reeve's opinion as to the effect of Plaintiff's medications; and (3) consider Dr. Reeve's opinion in accordance with the factors enumerated in 20 C.F.R. § 404.1527(c)(1)-(6).[6] Again, the Court disagrees.

First, as discussed in connection with the ALJ's treatment of NP Kolomeir's opinion, because the Court "can tell from the decision that the ALJ declined to give controlling weight to Dr. [Reeve's] opinion, [it] will not reverse on this ground." *Mays*, 739 F.3d 569, 575 (10th Cir. 2014). Secondly, while the ALJ could have provided a more consolidated discussion of the evidence submitted by Dr. Reeve, his decision adequately supports his rejection of Dr. Reeve's opinion.

ALJ Meyer frontloaded his decision with numerous references to the medical evidence submitted by Dr. Reeve. *See, e.g.*, AR 53, 59, 60. He noted that neurologic examinations indicated that Plaintiff had normal motor strength and ambulation and only a mildly restricted to normal cervical range of motion. (AR 53, 59). ALJ Meyer further observed that Dr. Reeve found that Plaintiff's pain was controlled by medication and that Plaintiff was capable of "light duty." (AR 53). He also discussed the fact that Dr. Reeve discontinued Plaintiff's narcotics in early 2013 because the doctor could not "justify [Plaintiff] using further narcotics." (AR 53, 1223, 1231). Then, when specifically addressing Dr. Reeve's letter regarding Plaintiff's inability

---

[6] The Court notes that Plaintiff does not raise a "treating physician rule" argument.

to work, ALJ Meyer added that the doctor's opinion was inconsistent with the fact that Plaintiff was actually working part-time between 2010 and 2014. (AR 61).

Accordingly, ALJ Meyer considered and discussed Plaintiff's treatment history with Dr. Reeve, as well as the associated medical records, and provided specific, legitimate, and substantiated reasons for rejecting Dr. Reeve's opinion. *See, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (explaining that factual findings must be supported by substantial evidence); *Byron*, 742 F.2d 1232, 1235 (10th Cir. 1984) (stating that the ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed.").

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that Plaintiff's claims are without merit. **IT IS, THEREFORE, RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Reverse or Remand (Doc. 25).

_____*/s/ Kevin Sweazea*_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**